IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VICTORY ENERGY OPERATIONS, LLC,

                Plaintiff,

v.                                          CIVIL ACTION NO. 2:18-cv-00457

UNION CARBIDE CORPORATION, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Before this Court is Plaintiff Victory Energy Operations, LLC's ("Plaintiff") Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction or, Alternatively, to Stay Action Pending Mandatory Arbitration. (ECF No. 17.) For the reasons explained more fully herein, Plaintiff's motion, (ECF No. 17), is **GRANTED**.

### I.    BACKGROUND

Plaintiff brought this action on March 14, 2018, alleging that Defendant Union Carbide Corporation ("Defendant")[1] failed to make payment under two contracts it executed with Plaintiff. (*See* ECF No. 1.) On September 7, 2016, Plaintiff and Defendant "entered into a 'Boiler Rental Agreement' . . . relating to the delivery and rental of three industrial boilers, mobile trailers, and related equipment." (*Id.* at 2; ECF No. 1-3.) Later that year, "[o]n December 20, 2016, [Defendant] contracted with [Plaintiff] pursuant to Purchase Order . . . 4505171603 . . . for the

---

[1] Plaintiff also brought suit against Defendant Bayer CropScience, LP, which was dismissed by this Court's Order dated June 13, 2018. (ECF No. 24.)

manufacture, delivery, and installation of industrial boilers" at a facility operated by Defendant. (ECF No. 1 at 1–2; ECF No. 1-1.)

When Defendant "failed to make full payment" on Plaintiff's invoices for these two contracts, Plaintiff "filed a Notice of Mechanic's Lien" in the amount of $1,286,286.48 in Kanawha County, West Virginia, on May 26, 2017. (ECF No. 1 at 3–4.) Plaintiff also provided Defendant "with a written Lease Default Notice stating that it would be exercising its right to remove the rental equipment." (*Id.* at 4.) Defendant paid "the amounts owed pursuant to the May 26, 2017, Mechanic's Lien" but "has made no further payments" under either the Boiler Rental Agreement or Purchase Order 5405171603. (*Id.*) As a result, Plaintiff filed a second Notice of Mechanic's Lien in the amount of $1,121,077.11 on September 25, 2017. (*Id.* at 3, 7; ECF No. 1-4.) Plaintiff then filed the suit pending before this Court.

In its answer to Plaintiff's complaint, Defendant asserted several counterclaims based on Plaintiff's alleged failure to perform under a separate contract, Purchase Order 4501915295, which was executed on November 6, 2014. (ECF No. 10 at 8–13; ECF No. 10-1.) Defendant asserts that the boilers it ordered pursuant to that contract were defective and "could not be repaired," and that Plaintiff "refused to repair or replace the boilers." (ECF No. 10 at 9–10.) Defendant further alleges that it was required to "rent boilers to maintain its plant operations," and "the only units available were from [Plaintiff]." (*Id.* at 10.) According to Defendant, this was the reason it entered into the Boiler Rental Agreement, (*id.*), and Purchase Order 4505171603 "for the removal of two existing boilers and the fabrication and installation of two replacement boilers," (ECF No. 26 at 3). In its motion now before this Court, Plaintiff argues that Defendant must resolve its counterclaims through arbitration pursuant to the terms of Purchase Order 4501915295. (ECF No. 18.)

2

## II.      LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiff moves to dismiss Defendant's counterclaims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* ECF No. 17; ECF No. 18 at 4.)[2] A challenge to subject matter jurisdiction may be either facial, which is based solely on the allegations in the pleadings, or factual, which permits the consideration of matters outside the pleadings. *See Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). When the challenge is factual, this Court "appl[ies] the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredricksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see* Fed. R. Civ. P. 56(a) (stating that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

### B. Motion to Compel Arbitration

"The rights and responsibilities of the parties with respect to [an] arbitration agreement are governed by the Federal Arbitration Act" ("FAA"), 9 U.S.C. § 1, *et seq. Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). The FAA "permits [this Court] to compel arbitration when [it] 'would have jurisdiction over a suit on the underlying dispute,' through 'diversity of citizenship or some other independent basis.'" *Del Webb Cmtys.,*

---

[2] This Court acknowledges that there is some disagreement about whether Rule 12(b)(1) is the proper mechanism to dismiss in favor of arbitration. *Compare City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880–81 (8th Cir. 2017) ("[A]n arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction."), *with Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to [Rule 12(b)(1)] when the parties' dispute is subject to binding arbitration."). This Court applies the Rule 12(b)(1) standard because Plaintiff uses it and because the Fourth Circuit has not clarified the appropriate standard.

*Inc. v. Carlson*, 817 F.3d 867, 872 (4th Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Under the FAA, "a written agreement to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Patten Grading & Paving, Inc.*, 380 F.3d at 204 (quoting 9 U.S.C. § 2). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (internal quotation marks omitted).

"[A] litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted); *see Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) ("A court may compel arbitration of a particular dispute only when the parties have agreed to arbitrate their disputes and the scope of the parties' agreement permits resolution of the dispute at issue."). "The issue whether a dispute is arbitrable presents primarily a question of contract interpretation, requiring that we give effect to the parties' intentions expressed in their agreement," with "[a]ny uncertainty regarding the scope of arbitrable issues . . . resolved in favor of arbitration." *Muriithi*, 712 F.3d at 179; *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001) ("Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration.").

## III. DISCUSSION

The principal issue to be decided is whether Purchase Order 4501915295, which is the contractual basis for Defendant's counterclaims, includes an arbitration agreement that covers those counterclaims. *See Muriithi*, 712 F.3d at 179. The language of Purchase Order 4501915295 does not mention arbitration or dispute resolution. (*See* ECF No. 10-1.) It incorporates by reference the warranty provisions "as specified in 'UCC TC's Evergreen Rev0 VEO Comments 9-15-14 ["TC's Evergreen"],'" (*id.* at 2), but the TC's Evergreen warranty provision does not contain dispute resolution terms, (ECF No. 10-2 at 5–6). However, Defendant concedes that the TC's Evergreen arbitration provision applies because Plaintiff's acknowledgement of Purchase Order 4501915295 states that the order is "accept[ed] in accordance with" those terms. (ECF No. 26 at 5; *see* ECF No. 26-3 at 2.) Thus, an agreement exists between the parties to arbitrate certain claims with respect to Purchase Order 4501915295.

More importantly, all of Defendant's counterclaims fall within the scope of the agreement. Purchase Order 4501915295's arbitration provision provides in part,

> ALL CLAIMS, DISPUTES AND MATTERS IN QUESTION BETWEEN [Plaintiff] AND [Defendant] ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE PERFORMANCE OR BREACH THEREOF WHICH HAVE NOT BEEN RESOLVED THROUGH NEGOTIATION OR MEDIATION SHALL BE RESOLVED IN A TIMELY MANNER BY BINDING ARBITRATION.

(ECF No. 10-2 at 14 (emphasis in original).) Defendant's breach of contract counterclaim is based on Plaintiff's "fail[ure] to comply with the terms of" Purchase Order 4501915295. (ECF No. 10 at 10.) Similarly, its counterclaims for breach of warranties are based on express and implied warranties arising out of Purchase Order 4501915295. (*Id.* at 11–12.) Finally, Defendant's indemnification counterclaim is based on the indemnification terms incorporated into

Purchase Order 4501915295.  (*Id.* at 12.)  These counterclaims clearly "aris[e] out of or in connection with [Purchase Order 4501915295] or the performance or breach thereof."  (ECF No. 10-2 at 14 (emphasis deleted).)  Therefore, Defendant is obligated to arbitrate these counterclaims in accordance with the terms of the parties' agreement.

For its part, Defendant does not dispute that its counterclaims are governed by Purchase Order 4501915295's arbitration provision.  (*See* ECF No. 26 at 5.)  However, Defendant argues that either Plaintiff waived its right to arbitrate by filing the above-styled matter, or all of the claims at issue in this case, including Plaintiff's claims, are subject to arbitration.

With respect to waiver, "a party loses its right to a stay of court proceedings in order to arbitrate if it is in default in proceeding with such arbitration."  *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) (internal quotation marks omitted); *see* 9 U.S.C. § 3.  Default occurs when the party seeking arbitration "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."  *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009).  Importantly, there must be a showing of "actual prejudice," which turns on "the amount of the delay and the extent of the moving party's trial-oriented activity."  *Wheeling Hosp., Inc.*, 683 F.3d at 587 (internal quotation marks omitted).  As Plaintiff points out, it "has not taken any measures affecting its right to arbitrate claims under [Purchase Order 4501915295]" because its claims in this action are not based on that contract.  (ECF No. 31 at 3–4.)

However, the crux of Defendant's waiver argument is that Plaintiff waived its right to arbitrate under Purchase Order 4505171603 and the Boiler Rental Agreement—which form the bases for the claims in Plaintiff's complaint in this action—by filing suit instead.  (*See* ECF No. 26 at 5.)  Defendant contends that the transactions surrounding Purchase Order 4501915295, the

6

Boiler Rental Agreement, and Purchase Order 4505171603 are so intertwined that they constitute the same dispute and thus should be resolved in the same proceeding. (*Id.* at 8–9.) According to Defendant, "[t]here would be no [Purchase Order 4505171603] or boiler rental agreement without [Purchase Order 4501915295] and [Plaintiff's] breach of that agreement." (*Id.* at 9.) Defendant further notes that "both purchase orders . . . incorporate[] identical arbitration provisions, and [Plaintiff] even sought to invoke the arbitration provision incorporated into [Purchase Order 4505171603] prior to filing this lawsuit." (*Id.* at 5.)

Indeed, the terms of Purchase Order 4505171603 state that it is subject to "USS TC's Ireland Rev 8, Final Agree VE and UCC on December 19, 2016" ("TC's Ireland"). (ECF No. 1-1 at 2.) The arbitration provision in TC's Ireland is identical to that in TC's Evergreen: the parties must resolve "all claims, disputes, and matters in question . . . arising out of or in connection with [Purchase Order 4505171603] or the performance or breach thereof . . . by binding arbitration." (ECF No. 1-2 at 14 (emphasis deleted).) Plaintiff acknowledges that it sought arbitration of the dispute in relation to the mechanic's lien it filed on May 26, 2017, but discontinued the proceedings when Defendant "ma[d]e full payment." (ECF No. 31 at 3.) However, Plaintiff fails to mention whether it sought to return to arbitration upon filing the second mechanic's lien on September 25, 2017, and—if it did not—to explain why it filed this action instead. Plaintiff cannot force Defendant to arbitrate its counterclaims while ignoring its obligation to arbitrate the claims alleged in the complaint.

Plaintiff's claims—including those related to the Boiler Rental Agreement—are within the scope of Purchase Order 4505171603's arbitration provision. Although this Court agrees with Plaintiff that the Boiler Rental Agreement does not itself include an arbitration provision,[3]

---

[3] Interestingly, the Boiler Rental Agreement contemplates that an action to enforce its terms will be filed "in the

Plaintiff's complaint treats the two contracts as if they are one and the same. Charges pursuant to both the Boiler Rental Agreement and Purchase Order 4505171603 are included in the total amount of the September 25, 2017 mechanic's lien that Plaintiff seeks to enforce in this action. (*See* ECF No. 1 at 7; ECF No. 1-4 at 18–19.) Plaintiff's claim for breach of contract is also based on Defendant's failure to pay under both contracts. (ECF No. 1 at 5.) Further, Plaintiff's *quantum meruit* and unjust enrichment claims are based on Defendant's failure to make full payment for "services, materials and rental equipment." (*Id.* at 5–6.) Plaintiff's fraud claim is based on Defendant's alleged representation that "it would continue to make timely payments under the *contracts* going forward." (*Id.* at 8 (emphasis supplied).) All of these claims "aris[e] out of or in connection with [Purchase Order 4505171603] or the performance or breach thereof." (ECF No. 1-2 at 14.) Thus, they are subject to arbitration, as Plaintiff acknowledged when it first sought to arbitrate the dispute after filing the May 26, 2017 mechanic's lien.

The claims presently before this Court must be resolved pursuant to the parties' agreements to arbitrate. Therefore, this Court concludes that dismissal of the entire action is appropriate. *See Choice Hotels Int'l, Inc.*, 252 F.3d at 709–10 ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction or, Alternatively, to Stay Action Pending Mandatory Arbitration, (ECF No. 17), is **GRANTED**. As all of the claims are subject to arbitration, the above-styled matter is **DISMISSED**.

**IT IS SO ORDERED**.

---

appropriate State or Federal Courts . . . in Tulsa County, State of Oklahoma." (ECF No. 1-3 at 7.)

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 16, 2018

THOMAS E. JOHNSTON, CHIEF JUDGE